<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID W. NOBLE, individually and on behalf of others similarly situated,** <br><br> *Plaintiff*, <br><br> v. <br><br> **SAMSUNG ELECTRONICS AMERICA, INC.,** <br><br> *Defendant.* | **Civil Action No. 15-3713** <br><br> **OPINION** |

**ARLEO,** U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>

**THIS MATTER** comes before the Court on Defendant Samsung Electronics America, Inc.'s ("Defendant" or "Samsung") motion to compel arbitration, dismiss the class claims, and stay the proceeding. Dkt. No. 12. For the reasons set forth herein, the motion is **DENIED**.

**I.   B**ACKGROUND

This case involves allegations that Samsung misrepresented the battery life of one of its smart watch products. Samsung does not address the merits of the claims; rather, it contends that the claims must be arbitrated in light of an arbitration provision contained in the product's guide booklet.

**A.  The Smartwatch**

In November 2014, Samsung released the Samsung Galaxy Gear S Smartwatch ("Smartwatch"). Compl. ¶¶ 1, 19, Dkt. No. 1. Although not Samsung's first smartwatch, it was the most technologically ambitious: it was the first major broadly marketed smartwatch that could

1

independently function as a phone.  Id.  That is, for the first time, customers could make and receive phone calls directly from the Smartwatch itself, without an accompanying phone.  Id. ¶ 19.

Samsung made several public statements about the Smartwatch's battery life.  Id. ¶¶ 21-24.  It claimed on its website that the Smartwatch's battery would typically last twenty-four to forty-eight hours without being recharged, though the claim was removed from the website in early 2015 without explanation.  Id. ¶¶ 21, 22, 26.  Samsung made similar claims in press releases.  Id. ¶ 23.  For example, it stated in a Summer 2014 press release that the Smartwatch battery had a "Typical Usage [of] 2 days."  Id. ¶ 23.  Similar statements appeared in print and online advertisements, as well.  Id. ¶ 24.

### B. Plaintiff's Purchase of the Smartwatch and Battery Issues

In early November 2014, Plaintiff David Noble ("Plaintiff" or "Noble") viewed Samsung's representations about battery life on its website, in press releases, and advertisements.  Id. ¶ 11.  Based on these representations, he bought a Smartwatch from an AT&T store in Georgia, where he lives.  Id. ¶¶ 10, 12.  He paid $199 for the product and entered into a two-year agreement with AT&T to provide 3G mobile telecommunication technology on the Smartwatch, for approximately $10 per month.  Id. ¶ 13.

Upon using the watch, however, Noble noticed that the battery only lasted about four hours until he had to recharge it.  Id. ¶ 14.  This happened even though his usage was normal and within the typical parameters of the product's intended use.  Id.  Unhappy with the Smartwatch's performance, he replaced it on two occasions, first through AT&T, then though Samsung directly.  See id. ¶¶ 15-16.  The batteries on both replacement Smartwatches lasted for about the same amount of time as the first one, despite Samsung's assurances to Noble after the second trade-in that the product was not defective.  Id.

Noble is not the only purchaser to experience battery issues. According to a number of online comments from other dissatisfied Smartwatch purchasers, other consumers also had to recharge their products after roughly four to six hours of use. See id. ¶ 28. Neither Plaintiff nor other consumers would have purchased the Smartwatch had they known that the battery life was far shorter than the twenty-four to forty-eight hours represented by Samsung. Id. ¶ 29.

### C. Arbitration Provision

Contained within the packaging for the Smartwatch is a 135-page booklet called a Health and Safety and Warranty Guide ("Guide Book").[1] Declaration of Tim Rowden ("Rowden Decl.") ¶¶ 4-5, 7, Dkt. No. 12-2. The Guide Book contains a Standard Limited Warranty beginning on page eighty-seven. Rowden Decl. Ex. A at 87, Dkt. No. 12-3. The Standard Limited Warranty, in turn, includes an arbitration provision (the "Arbitration Agreement") beginning on page ninety-seven. Id. at 97. While the Standard Limited Warranty appears in the Guide Book's table of contents, the Arbitration Agreement does not. See id. at 2.

The Arbitration Agreement reads as follows:

> **What is the procedure for resolving disputes?**
>
> ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.
>
> Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's Product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances

---

[1] According to Samsung, the Guide Book and Standard Limited Warranty were also available on its website. Rowden Decl. ¶¶ 8-9.

>proceed as part of a class action . . . .

Id. at 97-98 (original emphasis).[2] The Arbitration Agreement also contains an opt-out provision, which permits the purchaser to "**opt out of this dispute resolution procedure by providing notice to SAMSUNG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product.**" Id. at 100 (original emphasis). The purchaser can provide notice of opt out, according to the provision, by e-mailing or calling Samsung to convey a series of product and purchaser identification information (e.g., the purchaser's address, product model name and serial number, etc.). See id. at 100-02.

Noble maintains that he did not read, nor was he aware of, the Arbitration Agreement. Declaration of David Noble ("Noble Decl.") ¶ 8, Dkt. No. 16-1.

### D. Procedural History

Noble filed a class action complaint in June 2015 on behalf of himself and a putative class of other purchasers of the Smartwatch, asserting causes of action for (1) fraud under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, et seq.; (2) common law fraud; (3) negligent misrepresentation; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; and (6) unjust enrichment. In August 2015, Samsung filed the instant motion to compel under Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty.

---

[2] Plaintiff did not attach the Guide Booklet to the complaint but does not challenge the authenticity of the version submitted together with Defendant's motion. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal citations omitted).

4

of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013).

**III.   ANALYSIS**

Samsung argues that Noble entered a binding agreement to arbitrate that covers the individual claims he asserts in this action. Noble responds that he did not agree to be bound because he did not have actual notice of the provision and was not on constructive notice given how Samsung concealed the Arbitration Agreement within the Guide Booklet. The Court agrees with Noble.

With its enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). Even in light of the FAA, however, "[a]rbitration is strictly a matter of contract. If a party has not agreed

to arbitrate, the courts have no authority to mandate that he do so." Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). Thus, in deciding whether a party may be compelled to arbitrate under the FAA, the Court considers (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the dispute falls within the scope of that valid agreement. Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219-20 (3d Cir. 2014). The party resisting arbitration may then invalidate the clause based on generally applicable contract defenses. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).[3]

### A. Agreement to Arbitrate

To determine whether the parties agreed to arbitrate, the Court turns to "ordinary state-law principles that govern the formation of contracts." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). Samsung and Noble agree that New Jersey law applies to the agreement-to-arbitrate question.

Under New Jersey law, an agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Id. "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Id. (internal citation omitted). Because arbitration involves a waiver of the right to pursue a case in a judicial forum, "courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Id. at 442-43 (internal citation omitted).

---

[3] Noble concedes, however, that the agreement's terms are not unconscionable. Opp'n Br. at 28, Dkt. No. 16.

To start, Samsung notes that, under New Jersey law, parties can be bound to agreements included inside product packaging (or, what are often called "shrink wrap" agreements). That is correct, see In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig., No. 08-0663, 2008 WL 5451024, at *4 (D.N.J. Dec. 31, 2008), but it does not end the inquiry. Shrink wrap agreements may well be a valid form of contract in some instances, but they do not always bind the purchaser to the terms. For that, the terms inside the packaging still must be conspicuously presented so that the purchaser knows, or at least reasonably should know, the legal rights he or she intends to surrender. See Hemberger v. E*Trade Fin. Corp., No. 07-1621, 2007 WL 4166012, at *4 (D.N.J. Nov. 19, 2007) ("[T]he arbitration agreement was conspicuous and sufficient to put Plaintiff on notice that he was agreeing to it."); Atalese, 219 N.J. at 447 (emphasizing that arbitration agreements should "assure reasonable notice to the consumer").[4]

On that point, Samsung's argument fails. First, Noble maintains that he did not have actual notice of the arbitration provision. Samsung does not challenge his factual assertion at this stage. Reply Br. at 2 n.3. Therefore, the Court accepts it as true.

Second, the Court cannot conclude that Noble had reasonable notice of the Arbitration Agreement. Samsung has not provided any evidence of writing on the outside of the package informing purchasers about important information located inside or online. The Guide Booklet, which was located underneath the watch and phone charger, does not readily identify itself as a

---

[4] Samsung attempts to discredit Noble's cases that refer to click or browse wrap arbitration agreements on the ground that they "address issues specific to online agreements." Reply Br. at 5 n.7. In support, Samsung cites a Second Circuit case, Specht v. Netscape Communications, 306 F.3d 17, 31 (2d Cir. 2002). A careful reading of Specht suggests the opposite. There, the court recognized that the contract principles that apply in the world of paper transactions "apply equally to the emergent world of online product delivery." Specht, 306 F.3d at 31. Moreover, Samsung has not offered any New Jersey cases that provide some type of special contract formation analysis for online agreements.

document that would contain waivers of legal rights. Smartwatch purchasers who wanted to look for any such waiver would have to review the table of contents, where they would not find any sections or subsections discussing arbitration or any other alternative dispute resolution mechanisms. They would find a section titled "Standard Limited Warranty," but that by itself is not sufficient. Purchasers can reasonably expect the Standard Limited Warranty to contain just what its title suggests—certain promises about how the product will work. But they will not necessarily expect it to also contain an imbedded, unannounced Arbitration Agreement that waives their ability to resolve any disputes in a court of law. Therefore, without the benefit of a table of contents, purchasers would have to read through almost every page of the 135-page Guide Book until they reached the Arbitration Agreement on page ninety-seven. Only then could they discover the relevant terms. Purchasers are not reasonably expected to perform such an investigation in order to understand the terms of an agreement.[5]

Certainly, that is not to say that arbitration clauses have to be set aside as separate freestanding documents or printed on packages. They do not. See Asbell v. Integra Lifesciences Holdings Corp., No. 14-677, 2014 WL 6992000, at *3 (D.N.J. Dec. 10, 2014); Blu-Ray Class Action Litig., 2008 WL 5451024, at *4. But, in order for an arbitration provision to be sufficiently conspicuous under New Jersey law, the consumer must have a fair opportunity to know that it exists. See Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 606 (App. Div. 2011) (noting "fundamental precept[] of contract law" that contracting parties must be "fairly informed of the contract's terms"). Samsung did not give Noble that opportunity. Therefore, no

---

[5] This conclusion does not offend the FAA's presumption in favor of arbitrability. While such a presumption exists under the FAA, it "applies only when interpreting the scope of an arbitration agreement, and not when deciding whether a valid agreement exists." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 n.3 (3d Cir. 2014) (internal citations omitted).

meeting of the minds could have occurred. Without that, the Arbitration Agreement is unenforceable.[6]

Samsung offers several arguments to the contrary, but none are persuasive. First, Samsung argues that Noble should have been on notice because he received the Guide Book three times. But receipt of the three Guide Books does not change the fact that the Arbitration Agreement was inconspicuously placed in each one. Second, Samsung contends that Noble was bound to the Arbitration Agreement because he did not exercise his opt-out right. Given that Noble never entered into the Arbitration Agreement, however, he could not have been bound by the opt-out provisions contained within. The same holds true for Samsung's argument that the class claims should be dismissed given the Arbitration Agreement's prohibition on class actions. Because Noble did not enter into any agreement to arbitrate, he likewise did not agree to arbitrate the claims individually. Finally, Samsung argues that the "availability of terms and conditions online is a

---

[6] The parties point to cases from District Courts in California where disagreement exists over whether consumers had inquiry notice of similar arbitration clauses in Samsung guide booklets. Compare Norcia v. Samsung Telecomms. Am., LLC, No. 14-00582, 2014 WL 4652332 (N.D. Cal. Sept. 18, 2014) (finding no inquiry notice) with Dang v. Samsung Elecs. Co., Ltd., No. 14-00530, 2015 WL 4735520 (N.D. Cal. Aug. 10, 2015); Sheffer v. Samsung Telecomms. Am., LLC, No. 13-3466, 2014 WL 792124 (C.D. Cal. Feb. 6, 2014); Han v. Samsung Telecomms. Am., LLC, No. 13-3823, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014); Carwile v. Samsung Telecomms. Am., LLC, No. 12-5660, 2013 U.S. Dist. LEXIS 485089 (C.D. Cal. July 9, 2013). These cases turn on interpretations of California contract law and therefore are not relevant to the Court's analysis here.

Samsung also relies on McNamara v. Samsung Telecomms. Am., LLC, No. 14-1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014). The court in McNamara held that Samsung provided the plaintiff with reasonable notice of the arbitration clause in a warranty booklet, though the court does not discuss with any detail where the provision was placed in the booklet. The court based its conclusion on the premise that "[w]e are dealing with so-called 'smart phones' which by their nature are extremely complicated and provide for a multitude of activities. Because of these qualities, a purchaser would be expected to review the product user guide in order to get as much out of the product as he can." Id. at *2. The opinion, however, does not give any other identifying information about the arbitration clause's placement in the warranty booklet. As such, McNamara, which is persuasive authority, is not a helpful analogy to the instant case.

sufficient basis for enforcing them, despite the fact that a plaintiff was unaware of them." Def.'s Br. at 14. However, the main case Samsung relies on, Schwartz v. Comcast Corp., involved a plaintiff who argued that he was not bound by an agreement because "the contract was too difficult to find . . . ." 256 Fed. App'x 515, 519 (3d Cir. 2007). The court rejected the argument because the agreement was posted on the defendant's web site. Id. ¶ 520. Here, the availability of the Guide Book is not at issue. Instead, the issue is whether the terms therein were readily ascertainable or unreasonably hidden. Samsung's arguments fail.

### IV. Conclusion

For the reasons set forth herein, Defendant's motion is **DENIED**. An appropriate order accompanies this opinion.

**Dated: March 15, 2016**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**